IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melanie Ferguson,         :
        :
           Petitioner    :
        :
        v.        : No. 1405 C.D. 2024
        : Submitted: December 8, 2025
Unemployment Compensation    :
Board of Review,         :
        :
           Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE MICHAEL H. WOJCIK, Judge (P.)
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY JUDGE WOJCIK             FILED: April 17, 2026

Melanie Ferguson (Claimant), proceeding *pro se*, petitions for review from the August 7, 2024 order of the Unemployment Compensation Board of Review (UCBR), which affirmed the decision of a referee and denied unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] (relating to willful misconduct). Claimant contends that the UCBR's findings are not supported by substantial evidence and do not support a determination that Claimant committed willful misconduct without good cause. Claimant also claims that her communications were protected by the First

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

Amendment of the United States Constitution (First Amendment), U.S. Const. amend. I, and the Whistleblower Law.[2]  Upon review, we reverse and remand.

Claimant worked for George Junior Republic in Pennsylvania (Employer) as a full-time Medicaid Case Manager from September 10, 2012, until her last day of work on January 28, 2022.  After her separation from employment, Claimant applied for UC benefits, which a local service center granted.  Employer appealed, asserting Claimant's discharge was for willful misconduct.

At the hearing, the referee received evidence and heard testimony from Claimant and Employer's Human Resources (HR) Officer, Susan Boland (HR Director).  Neither party was represented by counsel.  Based on the testimony and evidence presented, the referee found that Employer had a grievance policy (Policy).  Per the Policy, if an employee had a complaint, he/she was to bring it to his/her direct supervisor.  Claimant was aware of Employer's Policy.  Claimant disapproved of the CEO's management.  Claimant felt that the CEO did not listen to his subordinates, made unilateral decisions, which she did not support, and followed the letter of the law, not the spirit of the law.  Claimant was upset because a number of employees left employment with Employer over an unknown period of time.  Claimant believed the employees left due to poor management.  On December 23, 2021, Claimant became aware that her supervisor (Supervisor) was also leaving Employer and put in his notice.  Claimant felt Supervisor's departure would be a significant loss for Employer.  Claimant conveyed her concerns to Supervisor, but he said he had already addressed those concerns with the CEO.  Claimant knew a member of Employer's Board of Directors, so she contacted the Board Member, believing she would effectuate a wake-up call for the Board.  Claimant complained to the Board

---

[2] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§1421-1428.

Member about Employer. The CEO became aware that Claimant complained to the Board Member about Employer. The CEO and HR Officer met with the Claimant on January 2 or 3, 2022, and told her that her concerns should be brought up the chain of command per the Policy, and she was not to go to a Board Member with complaints. On January 9, 2022, Claimant contacted the Board Member and asked her to contact Supervisor. On January 21, 2022, Claimant again contacted the Board Member and informed her it was Supervisor's last day, and indicated Supervisor wanted the Board Member to contact him. Employer discharged Claimant on January 28, 2022, for failure to follow Employer's Policy. Referee's Decision, 4/27/23, Findings of Fact (F.F.) Nos. 3-19.

Ultimately, the referee concluded that Claimant violated Employer's Policy without good cause. Thus, the referee determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law for willful misconduct. Claimant appealed the referee's decision to the UCBR.

Based on the record created at the referee's hearing, the UCBR adopted and incorporated the referee's findings as its own. The UCBR found the testimony offered by HR Officer credible as to its Policy and Claimant's knowing violation of it. The UCBR concluded that Employer met its burden of proof under Section 402(e) of the Law. The UCBR further concluded that Claimant did not establish an affirmative defense or good cause for violating Employer's Policy. By decision dated August 7, 2024, the UCBR affirmed the referee's determination and denied UC benefits to Claimant. Claimant's petition for review to this Court followed.[3]

---

[3] Our review of the UCBR's decision is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1261 n.5 (Pa. Cmwlth. 2015). "[W]here there is substantial evidence to support
**(Footnote continued on next page…)**

3

On appeal, Claimant argues that the UCBR's findings are not supported by substantial evidence and that the UCBR erred in concluding that Claimant's actions amounted to willful misconduct under Section 402(e) of the Law. She defends that she had good cause for violating Employer's Policy and that her conduct was protected by the First Amendment and the Whistleblower Law.

**Substantial evidence**

First, Claimant contends that the UCBR's findings are not supported by substantial evidence. Specifically, Claimant challenges F.F. No. 12, which provides: "Claimant conveyed her concerns to Supervisor, but he said her concerns had already been addressed with the CEO." Claimant contends this finding contains an omission that Supervisor raised his concerns to the CEO *and* HR – satisfying both steps in the Policy's chain of command for grievances.

In UC cases, the UCBR is the ultimate factfinder, and its findings are conclusive on appeal, provided there is substantial evidence to support them. *Woodring v. Unemployment Compensation Board of Review*, 284 A.3d 960, 963 (Pa. Cmwlth. 2022). "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 964. "It is irrelevant whether the record contains evidence to support findings other than those made by the fact finder; the critical inquiry is whether there is substantial evidence in the record to support the findings actually made." *Wise v. Unemployment Compensation Board of Review*, 111 A.3d 1256, 1262 (Pa. Cmwlth. 2015). A reviewing court must examine "the evidence in the light most favorable to the prevailing party, and give

the agency's factual findings and those findings support the legal conclusions, 'it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard.'" *Id.* (quoting *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 n.14 (Pa. 2002)).

4

that party the benefit of all inferences that can be logically and reasonably drawn from the testimony." *Id.*

Here, the language of F.F. No. 12 comes directly from Claimant's own testimony at the referee's hearing. Claimant testified: "[Supervisor] reported directly to the CEO. . . . [Supervisor] said that the concerns that were causing him to leave [Employer] had already multiple times been addressed with the CEO." C.R. at 96. As for the omission, the record is devoid of any evidence that Supervisor addressed his concerns with HR. *See id*. We, therefore, conclude that F.F. No. 12 is supported by substantial evidence.

**Willful Misconduct**

Next, Claimant argues that the UCBR erred in determining that she was terminated from employment for willful misconduct. Section 402(e) of the Law provides, "[a]n employe shall be ineligible for compensation for any week . . . [i]n which [her] unemployment is due to [her] discharge . . . from work for willful misconduct connected with [her] work . . . ." 43 P.S. §802(e). "[W]illful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014) (citing *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422 (Pa. 2002)).

The employer bears the initial burden of proving a claimant engaged in willful misconduct. *Johns*, 87 A.3d at 1009. When asserting a discharge based on

a violation of a work rule, an employer must establish the existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation. *Id.* (citing *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338 (Pa. Cmwlth. 2008)).

Once an employer meets its burden of proving willful misconduct, the burden shifts to the employee to prove good cause for her actions. *Johns*, 87 A.3d at 1010. An employee establishes good cause where her actions are justified or reasonable under the circumstances. *Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631, 634 (Pa. 1976); *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). A determination of "willful misconduct requires a consideration of 'all of the circumstances, including the reasons for the [claimant's] noncompliance with the employer's directives.'" *Docherty*, 898 A.2d at 1209 (quoting *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001)).

Here, Employer established the existence of the Policy governing grievances. Per the Policy, if employees had a grievance or a complaint, they were supposed to bring it to their supervisor and have it documented. C.R. at 94, 97. From there, it would go through the chain of command – HR and then the CEO. *Id.* Employer's Policy was reasonable because Employer had a legitimate interest in requiring employees to bring complaints or grievances up through the chain of command, rather than bringing those issues directly to members of the Board of Directors. Claimant admitted that she was aware of the Policy. C.R. at 97.

Claimant defends that the Policy merely encourages employees to follow the chain of command and was not mandatory. However, neither Claimant nor Employer submitted a copy of the Policy into evidence. Even if the mandatory

6

nature of the Policy was open to interpretation, following the first instance of contacting the Board Member directly, Employer made it clear that the Policy was mandatory. The CEO and HR Officer met with Claimant, reappraised her of the Policy, and expressly warned her not to contact the Board Member directly again. C.R. at 95. Despite this directive, Claimant contacted the Board Member directly on two additional occasions thereafter. *Id*. at 97. Thus, Employer satisfied its burden establishing the existence of a work rule, the reasonableness of the rule, Claimant's knowledge of the rule, and its violation. The burden then shifted to Claimant to establish good cause.

### Good Cause

Claimant argues that her actions were justified because following the Policy would have been futile. We agree.

The UCBR expressly found that Claimant conveyed her concerns to her Supervisor, who told her those concerns had already been addressed with the CEO. F.F. No. 12. This finding is critical because the CEO was the subject of the concerns. Under Employer's Policy, the next steps after speaking with Supervisor were to bring the matter to HR and then to the CEO. Considering that Claimant's Supervisor conveyed Claimant's concerns to the CEO and that the CEO had disregarded them, requiring Claimant to follow the same protocol would be futile. Where compliance with a directive would be futile, an employee's deviation may be reasonable under the circumstances. *See St. Barnabas, Inc. v. Unemployment Compensation Board of Review*, 525 A.2d 885, 887 (Pa. Cmwlth. 1987) (the law does not require a claimant to perform a futile act).

7

Here, Claimant reasonably believed that raising the same concerns through HR or again to the CEO would accomplish nothing. Her decision to alert a Board member—an individual with oversight authority—was aimed at addressing systemic issues that internal channels had failed to resolve. Although Employer expressly instructed Claimant not to contact the Board member, that directive did not cure the futility of the prescribed grievance steps. Under these circumstances, we conclude Claimant established good cause for deviating from Employer's Policy. Accordingly, the UCBR erred in determining that Claimant was ineligible for benefits under Section 402(e) of the Law.[4]

For these reasons, we reverse the UCBR's order and remand to the UCBR for the award of UC benefits under the Law.

MICHAEL H. WOJCIK, Judge

---

[4] In light of this determination, we need not address Claimant's First Amendment and Whistleblower Law claims.

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melanie Ferguson,        :
:
        Petitioner    :
:
        v.        :  No. 1405 C.D. 2024
:  Argued:  December 8, 2025
Unemployment Compensation  :
Board of Review,        :
:
        Respondent :

# **O R D E R**

AND NOW, this 17th day of April, 2026, the order of the Unemployment Compensation Board of Review, dated August 7, 2024, is REVERSED and the above-captioned matter is REMANDED to the Unemployment Compensation Board of Review for proceedings consistent with the foregoing memorandum opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge